## JAMES WOOD v. THE STATE.

### No. 6431.   Decided May 29.

**Murder—Charge of the Court—Fact Case.**—The mere presence of a person at the time and place of the commission of an offense by another, will not render him liable unless, knowing the unlawful intent of such other, he aided him by acts or otherwise encouraged him to commit the offense.   This issue being raised by the proof in this case, the failure of the trial court to submit it in charge to the jury was error.   See the statement of the case for evidence *held* to inculpate the accused only by the testimony of an uncorroborated accomplice, and note that whether the testimony of the accomplice be true or untrue the evidence upon the whole is insufficient to support a conviction for murder in the second degree.

APPEAL from the District Court of Robertson.   Tried below before Hon. John N. Henderson.

This conviction was in the second degree for the murder of Jay Folk, a Chinaman, in Robertson County, Texas, on the 22d day of August, 1888. The penalty awarded the appellant was a term of five years in the penitentiary.

Lee Chop, a Chinaman, was the first witness for the State.   He testified in substance that he last saw Folk alive on the evening of August 22, 1888.   He saw his dead body on the next morning lying between two corn rows near the line dividing his (witness's) and Ebar's corn patches, the said patches being in the same field.   Horse tracks resembling the tracks of the witness's mare, and the tracks of a mule were found leading from the body to a point in the field where some party or parties, as shown by the remains of a fire, had recently camped.   The mule tracks near the body showed that the animal shied or jumped at that place, and on the ground at that point was found the sweat leather of a saddle—the same which the witness afterwards saw at the examining trial.   Ebar's gun, loaded with squirrel shot, was lying on the ground near the body.   The witness and Ebar hired the defendant to watch their corn patches, upon which there had been recent depredation, and defendant, riding witness's mare, left witness's house to go to the field about 8 o'clock on the fatal night.

Ebar, a Chinaman, testified for the State that he last saw the deceased alive about 8 o'clock on the night of his death.   At that hour he got the witness's gun and left witness's house to go to the field to watch witness's corn.   Lee Chop and the witness hired the defendant to perform the same service on that night.   From Folk's body, when found on the next day, the witness trailed the tracks of a horse and mule to a large live oak tree, about 300 yards distant, where a fire had been built and the parties riding the animals camped.   He observed the ground where the mule jumped near the body and saw the sweat leather mentioned by Chop in his testimony.   The witness's gun was found near deceased's body.   It had not been discharged.

Hallie, a Chinaman, testified substantially as did Ebar about the departure of deceased for the field on the fatal night, the discovery of the body, gun, sweat leather, and the horse and mule tracks, etc., on the next morning; and in addition, that the deceased was the overseer on the place and carried the keys. The deceased and the stepdaughter of the defendant had a quarrel about three weeks before the death of deceased and the latter caused the said stepdaughter of defendant to leave the place. She was still absent when the deceased was killed. Deceased also quarreled with other colored people who lived in the neighborhood about depredating on his corn, but had no fight with them.

Mose Blackshear testified for the State that he had no recollection of seeing deceased either on the day or the night of August 22, 1887. On the night of that day the witness and the defendant went together to the field to watch the corn patches, witness riding the mule of his brother-in-law Levi Pendarris, and taking the said Levi's gun. Defendant rode Lee Chop's mare, but had no gun. Passing the place where the body of Folk was afterwards found the mule ridden by witness became frightened and made a violent spring, whereby the sweat leather was torn from the saddle and fell to the ground. Witness missed the sweat leather at once, but rode on with the defendant to a large burr oak tree in the field between 400 and 600 yards distant, where they stopped. Defendant built a small fire and witness, tying the stake rope of his mule to his wrist, went to sleep. About midnight defendant wakened witness and told him that he heard hogs in the corn and asked for the gun to go to them. Witness thought he heard hogs in the corn himself and let defendant have the gun. He held defendant's mare and defendant went off. Within a few minutes witness heard the report of a gun and a short while afterwards defendant returned. One barrel of the gun had been discharged since he left the tree, and witness reloaded it with the same kind of small shot recently fired off.

Cross-examined, the witness said that what he took to be the noise made by a hog was in an opposite direction from the camp to that where the body was found on the next day. When defendant left the camp he went in the direction opposite from that in which the body was found, and the gun sounded to witness to have been discharged at a point opposite to that where the body was found. The State closed.

Oscar Harris testified for the defense that he was at defendant's house at 8 o'clock on the fatal night when defendant, riding Lee Chop's mare, started to the field. Witness slept that night on defendant's gallery, which was near the road leading into the field. Between eleven and twelve o'clock on that night the witness heard a shot fired at or near the point where deceased's body was found, and a few minutes later a man riding rapidly from the direction of the field towards the Big Brazos River passed defendant's house.

Roe Talbot testified for the defense that defendant's reputation for peace and quietude was good.

No brief for appellant.

*W. L. Davidson,* Assistant Attorney-General, for the State.

WHITE, PRESIDING JUDGE. — Appellant and one Blackshear were jointy indicted for the murder of Jay Folk. The prosecution was dismissed as to Blackshear, and he testified as a witness for the State on this trial. Even with his testimony, if it be conceded to be true, the case as made against appellant is one entirely of circumstantial evidence, for neither he or any other witness saw defendant shoot the deceased, and his testimony tended to show that defendant did not shoot the deceased, because he says that after loaning defendant his gun he, defendant, left in an opposite direction, and the gun was fired in an opposite direction to that from which the dead body of the Chinaman was afterwards found. Defendant when he went to the field that night did not carry a gun with him. Blackshear borrowed and carried one. Independently of his own testimony, the physical appearances at the scene of the homicide, as testified to by the other witnesses, were as strong if not stronger against Blackshear than this appellant—certainly stronger in that Blackshear went to the field with a gun, whilst defendant had none. If the killing occurred whilst the parties were together then the preponderance of the facts are in favor of the theory that Blackshear did the killing; and in that event defendant's mere presence, unless he participated in or encouraged by words or acts in its perpetration by Blackshear, would not have made him liable as a principal in the homicide. This view of the law was not submitted in the otherwise able and comprehensive charge of the learned trial judge as given to the jury, and its omission is complained of as error in the motion for new trial filed by appellant's counsel.

If Blackshear and appellant were not present and acting together at the time and in the commission of the crime, still the evidence is sufficient to put Blackshear in the attitude of an accomplice to the crime. If defendant alone committed the crime then his guilt can only be established by the testimony of Blackshear. Blackshear says that defendant borrowed his gun and went off to hunt for a hog which they thought they heard in the corn, and that a few moments thereafter he heard a gun shot in an opposite direction to the point where the dead Chinaman was subsequently found. Is Blackshear's testimony that defendant borrowed his gun in any manner corroborated? Or is the fact that defendant alone did the killing in any manner corroborated by any other testimony? If so, we have failed to find it in the statement of facts submitted to us in this record.

In our opinion the court should have instructed the jury that if Black-shear did the killing, and defendant was present but did not know the unlawful intent of Blackshear, and did not aid him by acts or encourage him to commit the act, that then his bare presence would not make him in any manner liable for the act.

We are further of opinion that even if it be conceded that Blackshear's evidence be true, the testimony is insufficient to sustain and support a verdict and judgment of conviction for murder of the second degree.

The judgment is reversed and cause remanded.

*Reversed and remanded.*

Judges all present and concurring.